**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STACEY LYNN DILLENBECK,**

                  **Plaintiff,**                  3:12-cv-1461
                                                                              (GLS)

                      v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                        **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Law Offices of Kenneth Hiller, PLLC | JAYA A. SHURTLIFF, ESQ. |
| 600 North Bailey Avenue - Suite 1A | KENNETH R. HILLER, ESQ. |
| Amherst, NY 14226 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | ELIZABETH D. ROTHSTEIN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Stacey Lynn Dillenbeck challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Dillenbeck's arguments, the court reverses and remands the Commissioner's decision.

### II. Background

On September 29, 2008, Dillenbeck filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since June 1, 2001. (Tr.[1] at 62-63, 106-110.) After her applications were denied, (*id.* at 64-69), Dillenbeck requested a hearing before an Administrative Law Judge (ALJ), which was held on August 11, 2010, (*id.* at 32-61, 77-80). On October 29, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-4, 11-26.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

Dillenbeck commenced the present action by filing her Complaint on September 24, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 11, 12.)

### III. Contentions

Dillenbeck contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 11 at 12-25.) Specifically, Dillenbeck claims that the ALJ erred in: (1) concluding that her mental health impairments are not severe; (2) determining her residual functional capacity (RFC); (3) assessing her credibility; and (4) failing to consult with a vocational expert. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 12 at 5-19.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 11 at 3-10; Dkt. No. 12 at 2.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severity Determination

First, Dillenbeck contends that the ALJ erred when she found Dillenbeck's mental impairments were non-severe. (Dkt. No. 11 at 12-15.) According to Dillenbeck, the ALJ misstated the facts when she noted that Dillenbeck "has undergone absolutely no mental/psychiatric treatment, diagnostic testing, and/or ongoing monitoring/observation; and has no record of psychiatric management of any kind." (Dkt. No. 11 at 12-13; Tr. at 18.) Further, Dillenbeck argues that the ALJ erred in rejecting the opinions of the consultative examiner and the state agency review

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical. As such, parallel citations to the Regulations governing SSI are omitted.

physician.  (*Id.* at 13-15.)  The court agrees that remand is appropriate.

At step two of the sequential evaluation, a claimant has the burden of establishing that she has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c); *see Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b)(3)-(6).  An ALJ's evaluation of a claimant's mental impairments must reflect her application of the "special technique" set out in 20 C.F.R. § 404.1520a, which necessitates her consideration of "four broad functional areas" that include: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3).  The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme."  *Id.* § 404.1520a(c)(4).  "[I]f the degree of limitation in each of the first three areas is rated 'mild' or

better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe.'" *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1520a(d)(1)).

Here, the ALJ determined that Dillenbeck's medically determinable mental impairments of obsessive-compulsive disorder and drug addiction and/or alcoholism and/or related substance abuse disorders were non-severe. (Tr. at 17.) The ALJ further explained that, although consultative examiner Mary Ann Moore diagnosed Dillenbeck with posttraumatic stress disorder, panic disorder with agoraphobia, impulse control disorder NOS, and personality disorder with obsessive-compulsive features, there was no corroborative findings from Dillenbeck's treating sources. (*Id.* at 17-18, 193-98.) Dillenbeck argues that the ALJ overlooked her treatment with Dr. Brenda Schlaen, her primary care physician at United Medical Associates, for anxiety disorder with panic attacks and insomnia. (Dkt. No. 11 at 12-13; Tr. at 180-190.) However, the ALJ explicitly mentioned Dillenbeck's treatment at Untied Medical Associates since 2006 for "reported anxiety

with sleeplessness." (Tr. at 18-19.)[3]

In determining that Dillenbeck's mental health impairments were non-severe, the ALJ found that Dillenbeck suffered mild limitations in the areas of activities of daily living, social functioning, and concentration, persistence, or pace, and had experienced no episodes of decompensation of extended duration. (*Id.* at 18.) The ALJ based this on Dillenbeck's self reported ability to watch television, care for her dog, read, do some routine household chores, cook, shop, and visit with friends and relatives. (*Id.*) Dillenbeck argues that the ALJ's determination is contrary to the opinions of Dr. Moore and psychological consultant M.C. Morog. (*Id.* at 196, 207-27; Dkt. No. 11 at 12-15.)

Dr. Moore examined Dillenbeck in January 2009 and found her to be cooperative with an adequate manner of relating socially. (Tr. at 195.) Dillenbeck displayed fair hygiene, slightly restless behavior, and appropriate eye contact. (*Id.*) Her expressive and receptive language

---

[3] Dillenbeck suggests that the ALJ failed to properly develop the record by failing to recontact Dr. Schlaen for "updated records." (Dkt. No. 11 at 13.) However, by Dillenbeck's own reports she had not treated with Dr. Schlaen since 2008. (Tr. at 38, 123-25, 135, 139.) Although the ALJ "has an affirmative obligation to develop the administrative record," *Perez v. Chater*, 77 F.3d 41, 47(2d Cir. 1996), it is also true that this obligation is not limitless. Here, as there were no obvious gaps, and the record presented "a 'complete medical history,'" the ALJ was under no duty to seek additional information before rejecting Dillenbeck's claim. *Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999) (citing *Perez*, 77 F.3d at 48).

abilities were adequate, thought processes were coherent and goal directed, affect was of full range and appropriate to speech and thought content, and mood was euthymic. (*Id.*) In addition, her attention and concentration was intact, but her recent and remote memory skills were mildly impaired, possibly due to depression. (*Id.* at 195-96.) Finally, Dillenbeck's cognitive functioning appeared to be in the average range, her insight was fair, and her judgment appeared "fair to guarded with depression and anxiety including agoraphobia." (*Id.* at 196.) Based on this examination, Dr. Moore opined that Dillenbeck can follow and understand simple instructions and consistently perform simple tasks. (*Id.*) According to Dr. Moore, Dillenbeck has the "ability to complete simplistic and complex tasks, although it may take her longer to learn and retain the complex information." (*Id.*) However, in Dr. Moore's opinion, Dillenbeck "may have difficulty dealing with stress as she does exhibit anxiety with agoraphobia which could cause problems with relating adequately with others. Her anxiety and depression could cause problems as well with making appropriate work decisions and maintaining a regular schedule." (*Id.*)

Dr. Morog reviewed Dillenbeck's medical records, including Dr. Moore's report, and opined that Dillenbeck suffered mild restrictions in

activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  (*Id.* at 220.)  Dr. Morog explained that Dillenbeck had not been seen in outpatient psychiatric or psychological services as an adult, although she had been treated by her primary care physician for anxiety and occasional depressive symptoms.  (*Id.* at 222.)  Further, Dr. Morog noted that Dillenbeck's complaints to Dr. Moore that she cannot leave her home unaccompanied, were not reported in her treating sources' notes.  (*Id.*)  Additionally, the results of Dr. Moore's mental status examination were within normal limits except for Dillenbeck's motor behavior, which was slightly restless.  (*Id.*)  Dr. Morog highlighted the fact that Dillenbeck's "mood was euthymic, she laughed and smiled appropriately, and there was no evidence of significant anxiety within the [consultative examination] setting."  (*Id.*)  Ultimately, Dr. Morog opined that, although Dillenbeck's allegations of complete inability to function outside of her home were not supported by the medical evidence, the record as a hole indicates that Dillenbeck suffers "a severe psychiatric diagnosis that causes mild to moderate impairment in adaptive and functional abilities."  (*Id.*)  However, Dr. Morog concluded that the medical evidence did not support an

impairment of sufficient severity to establish disability. (*Id.*)

Because the only medical opinions of record indicate that Dillenbeck's suffered more than mild limitation in the area of social functioning, the ALJ erred in finding that her mental impairment was not severe. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("'[A]n [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [but s]he is not free to set h[er] own expertise against that of a physician who [submitted an opinion to or] testified before h[er].'" (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983))). Because it is not clear whether the ALJ would have arrived at the same conclusion regarding Dillenbeck's RFC had she properly evaluated the severity of her mental impairment, remand is required. *Cf. Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (explaining that the need for agency reconsideration gives way "where application of the correct legal principles to the record could lead to only one conclusion").

**B.  Remaining Findings and Conclusions**

Because Dillenbeck's remaining contentions, (Dkt. No. 11 at 15-25), may be impacted by the subsequent proceedings directed by this Order, it

would be improper for the court to consider them at this juncture.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 9, 2013
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court